IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FOUNDATION MEDICINE, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 17-807-LPS-CJB |
| GUARDANT HEALTH, INC., | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM ORDER**

At Wilmington, Delaware this **15th day of February, 2018**.

1. On November 10, 2017, Plaintiff Foundation Medicine, Inc. ("Plaintiff" or "Foundation") filed a motion seeking a stay of this case (the "Motion") pending full resolution of Defendant Guardant Health, Inc.'s ("Defendant" or "Guardant") three petitions for *inter partes* review ("IPR") of the patent-in-suit, United States Patent No. 9,340,830. (D.I. 130) The United States Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") instituted IPR proceedings as to all three petitions; a Final Written Decision on the first petition is expected no later than October 11, 2018, and as to the other two petitions no later than December 6, 2018. (D.I. 131 at 3-4, 7-8 & n.5) Defendant opposes the instant Motion, which was fully briefed as of December 4, 2017, (D.I. 135), and argued telephonically on February 14, 2018.

2. This Court has typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to

gain a clear tactical advantage. *See, e.g., FMC Corp. v. Summit Agro USA, LLC*, Civil Action No. 14-51-LPS, 2014 WL 3703629, at *2 (D. Del. July 21, 2014).

3. The circumstances here are a little unusual, as this is the rare case where it is the patentee that is seeking a stay, and where the accused infringer (and IPR petitioner) is resisting one. It is also a case where, after taking into account the three stay-related factors set out above, the Court sees some merit to both sides' positions.

4. There are surely some arguments that favor the grant of Plaintiff's Motion. The PTAB instituted proceedings as to all of the asserted claims in this case. (D.I. 135 at 2) With expert discovery set to close on June 7, 2018, case dispositive motions due on August 17, 2018 and trial currently set to begin on January 14, 2019, (D.I. 123; D.I. 131 at 3), there is thus the real prospect that the parties and the Court could do a significant amount of pre-trial work, only to have the PTAB end up invalidating all asserted claims (or otherwise issuing decisions that render some of that work useless) soon thereafter. *Cf. Softview LLC v. Apple Inc.*, C.A. No. 12-989-LPS, C.A. No. 10-389-LPS, 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013) (finding that a stay was likely to simplify issues in the case where the PTAB had granted IPR with respect to all asserted claims of the patents-in-suit, for similar reasons). Additionally, if the Court did not stay the case and/or alter the trial schedule, then the PTAB's Final Written Decisions might be issued very close to trial. In such a case (and assuming some claims survived), the impact of the Final Written Decisions might require the parties to do more pre-trial work—and that, in turn, could result in a need to push back the trial date anyway.

5. On the other hand, there are some arguments that are helpful to Defendant's position. The case is not at an early stage (with claim construction proceedings concluded, and a

substantial amount of fact discovery completed)—a factor that disfavors a stay. *See Yodlee Inc. v. Plaid Techs. Inc.*, Civil Action No. 14-1445-LPS-CJB, (D.I. 312 at 9-10) (D. Del. Nov. 16, 2016) (finding that the "status of the litigation" factor disfavored a stay where extensive fact discovery had been completed, fact discovery was to close in a month, and the claim construction process had concluded). And because the parties are undisputedly direct competitors in the liquid biopsy field, the Court can infer that Defendant would face some amount of undue prejudice, were it to have the "cloud" of these infringement allegations to hang over it for a longer period (were a stay granted) than it would otherwise (were a stay denied). (D.I. 133 at 6-7 & n.3 (citing cases)) That said, the "undue prejudice" factor might have much more strongly disfavored a stay if Defendant had put forward actual record evidence better articulating *how, exactly,* this "cloud" has impacted its business operations.

6. The current record, as well as the particular procedural circumstances of the case, suggest that the appropriate decision is to provide Plaintiff with much, but not all, of the relief it seeks. The parties should finish fact discovery, which is nearly complete, including by taking all outstanding, previously-noticed depositions. (*Id.* at 12-13)[1] That way, the case will be in a posture where, once the PTAB issues its Final Written Decisions (and assuming at least one asserted claim remains to be litigated), it will not take too long to get the case to trial. Case deadlines will otherwise be stayed to allow the parties and the Court to conserve additional

---

[1] Allowing fact discovery to conclude will also address Defendant's concerns that Plaintiff would gain an "unfair tactical advantage" were Defendant not now able to complete fact discovery. (D.I. 133 at 12-13) Defendant argued that this would be so in light of the fact that "Foundation did not seek a stay until after it had completed deposing five of the eight Guardant witnesses it has sought to depose[, but] [m]eanwhile, Foundation has not offered ten Foundation witnesses that Guardant has noticed for deposition—including four of the named inventors of the asserted patent." (*Id.*)

3

resources until the PTAB issues its decisions. Within 7 days after the issuance of the last of the Final Written Decisions, the parties shall submit to the Court a joint letter that sets out: (1) the outcome of the PTAB proceedings; and (2) their respective views as to the appropriate timing for the expert discovery process, case dispositive motion process, a pre-trial conference and trial.[2] To the extent any claims survive after these Final Written Decisions are issued, the Court will thereafter schedule a teleconference with the parties, during which it will set the remaining schedule and a new trial date. This way, if the PTAB does not invalidate at some of the asserted claims, the parties will get a trial date as soon as possible as to those claims in 2019.

7. The Motion is thus GRANTED-IN-PART, in the manner set forth above.

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[2] In the event that the PTAB issues a decision on the first petition prior to issuing a decision on the other two petitions, the Court would also welcome a letter advising it of that fact.

4